UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FRANZ BISSERTH and WILLIE MAE RYNER, | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 21-cv-11068-ADB |
| UNITED STATES OF AMERICA and SIX UNKNOWN AGENTS of the UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT AGENCY, | * * * * * | |
| Defendants. | * * | |

### MEMORANDUM AND ORDER DENYING THE UNITED STATES' MOTION FOR RECONSIDERATION

BURROUGHS, D.J.

Franz Bisserth ("Bisserth") and Willie Mae Ryner ("Ryner") (together, "Plaintiffs") filed the instant action against the United States of America ("United States" or "Government") and Six Unknown Agents of the United States Immigration and Customs Enforcement Agency ("ICE Agents" or "Agents") asserting federal civil rights and personal injury claims stemming from an incident in June 2019 where the ICE Agents mistakenly forcibly entered and searched their home.  Currently pending is the Government's motion for reconsideration of the Court's prior Memorandum and Order, [ECF No. 21], declining to dismiss the case as time barred.  For the reasons set forth below, the Government's motion, [ECF No. 22], is DENIED.

I.      BACKGROUND

A detailed summary of the facts underlying this case are set forth in the Court's prior Order, [ECF No. 21 at 2–3], and, for present purposes, are summarized as follows.  During the early morning of June 27, 2019, Plaintiffs heard knocking on their front door and ICE Agents announcing their presence.  [ECF No. 1 ¶¶ 15–18 ("Compl.")].  The ICE Agents then broke through the door with a battering ram and entered Plaintiffs' home.  [Id.].  The Agents punched Bisserth in the face, pinned him to the ground, and, while on the ground, pointed a loaded handgun at his head.  [Id. ¶ 19].  The Agents also pointed a handgun at Ryner and shouted orders at her.  [Id. ¶ 22].  Plaintiffs were placed into custody while the Agents "ransacked the apartment."  [Id. ¶¶ 24–26].  Plaintiffs have not been accused of committing a crime nor, to their knowledge, have they been the focus of any governmental investigation at any time related to this incident.  [Id. ¶ 27].  They are not subject to arrest or deportation.  [Id.].  Plaintiffs assert that the Agents executed a search warrant on the wrong home, causing them significant property damage as well as pain and emotional distress.  [Id. ¶¶ 29, 34–35].  On June 28, 2021, Plaintiffs filed the complaint in his case, in which they have asserted various claims against the United States and the individual ICE Agents involved in the search, including assault and battery, negligence, intentional infliction of emotional distress, excessive force, and unlawful detention and search.  [Id. ¶¶ 36–88]

On November 18, 2021, the Government moved to dismiss the three counts brought against it under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2672, because Plaintiffs filed their complaint approximately two weeks beyond the FTCA's statute of limitations period. [ECF No. 15; ECF No. 16 at 4–6].  In their opposition, [ECF No. 18], filed on December 10, 2021, Plaintiffs explained the reasons for the late filing and asked that, for the reasons presented,

the Court deem the statute of limitations to be equitably tolled based on exceptional circumstances. Concluding that equitable tolling was warranted, the Court denied the Government's motion to dismiss on April 29, 2022. [ECF No. 21]. Thereafter, on July 12, 2022, the Government filed its motion for reconsideration of the April 29, 2022 Order. [ECF No. 22]. Plaintiffs opposed on August 2, 2022. [ECF No. 24].

## II. LEGAL STANDARD

"A federal district court has the discretion to reconsider interlocutory orders and revise or amend them at any time prior to final judgment." Davis v. Lehane, 89 F. Supp. 2d 142, 147 (D. Mass. 2000); see also Fed. R. Civ. P. 54(b); Fernandez-Vargas v. Pfizer, 522 F.3d 55, 61 n.2 (1st Cir. 2008) ("[A] district court has the inherent power to reconsider its interlocutory orders, and we encourage it to do so where error is apparent."). The Supreme Court, however, has cautioned that "courts should be loathe to [reconsider orders] in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1998) (quoting Arizona v. California, 460 U.S. 605, 618 n.8 (1983)). With these principles in mind, "a court should grant a motion for reconsideration of an interlocutory order only when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." Davis, 89 F. Supp. 2d at 147; see Tomon v. Entergy Nuclear Operations, Inc., No. 05-cv-12539, 2011 WL 3812708, at *1 (D. Mass. Aug. 25, 2011) ("[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.") (citing United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)).

3

### III.     DISCUSSION

In the Order denying the Government's motion to dismiss, the Court detailed the legal standard for equitable tolling and the circumstances that led to Plaintiffs' complaint being filed two weeks late. After careful consideration of the law and the facts, the Court found that Plaintiffs had satisfied the legal standard and that tolling was therefore appropriate. See [ECF No. 21].

In short, the filing was delayed due to a series of unpredictable events triggered by the incapacitation of Plaintiffs' first attorney. See [ECF No. 21 at 5–6]. Equitable tolling on the FTCA claims was warranted because (1) Plaintiffs did not have actual or constructive knowledge of the administrative closure letter; (2) Plaintiffs were diligent in pursuing their claim, even after their original attorney, Sinsheimer, suddenly stopped practicing law and dissolved his law firm; (3) the case file transmitted to their subsequent acquired counsel, Helinski, did not have a copy of the closure letter and the only person with knowledge of the letter, Sinsheimer, was entirely unreachable; (4) Helinski took reasonable steps to locate the original closure letter after first learning of its existence; and (5) there was no evidence that allowing these claims to proceed after only a two-week delay would prejudice the Government. From the record, Plaintiffs do not appear to be experienced litigants and likely had no reason to understand the procedural requirements underlying an FTCA claim prior to this incident.

In its motion, the Government correctly states the standard for reconsideration and then asks the Court to find that it made a "mistake" in the form of an error of law—the alleged error being the Court's "determine[ation] that Plaintiff[s'] counsel's [Helinski] failure to obtain the denial letter from Plaintiff[s'] original counsel constituted an extraordinary circumstance warranting equitable tolling." [ECF No. 23 at 3]. As an initial matter, the facts as presented by

the Government oversimplify what happened here by painting a picture of two competent and professional lawyers exchanging a file. In fact, Plaintiffs' first lawyer, Sinsheimer, suffered a "mental breakdown" that resulted in the immediate dissolution of his law firm and Sinsheimer closing his law practice. A second lawyer, who was apparently helping with Sinsheimer's remaining clients, held the file for a period of time and then passed it on to a third lawyer, Plaintiffs' current lawyer, Helinski. The second and third lawyers both claim to have been unaware of the administrative closure letter, and there is now no way of knowing the state of Sinsheimer's file, or whether he ever saw the letter, and if so, what he might have done with it. Any recollection that he might have had of that letter is thrown into question by the circumstances that ended his legal career. Ultimately, Helinski, upon learning of the letter, undertook to quickly file the complaint, albeit two weeks beyond the statute of limitations.

Beyond the Government's reductive account of the underlying facts, it seems to be asking the Court to find legal error in a decision that was within its discretion given the circumstances and the legal requirements for tolling. See Kusek v. Fam. Circle, Inc., 894 F. Supp. 522, 530 (D. Mass. 1995) ("The decision whether to equitably toll a statute of limitations is left to the sound discretion of the [District] Court."). Furthermore, the Government admits that there is no binding First Circuit precedent that would require a different outcome. Instead, it turns to cases from other jurisdictions that deal with "garden variety claim[s] of excusable neglect" with facts entirely devoid of the complications present here. See Dotson v. United States, 30 F.4th 1259, 1262 (11th Cir. 2022); Zappone v. United States, 870 F.3d 551, 554 (6th Cir. 2017); Raplee v. United States, 842 F.3d 328, 330 (4th Cir. 2016). In the only binding precedent the Government relies on, the First Circuit found that an agency did not abuse its discretion in denying equitable tolling where there was "[s]ubstantial evidence" that the petitioner "failed to show he exercised

5

reasonable diligence[.]" Neves v. Holder, 613 F.3d 30, 37 (1st Cir. 2010).[1]  The evidence here tells a different story.

In further response to the Government's view of those cases, the Court does not suggest that it was incumbent upon the Government to make sure that the right counsel received the administrative closure letter, but rather resists the idea that the Plaintiffs in this case had an obligation to inform themselves of the administrative process, and then somehow account for the possibility that their first lawyer would have a mental health issue and, beyond that, know to ask their two subsequent lawyers if they had received complete case files, including the administrative closure letter.

"[T]he decision to apply equitable tolling is a judgment call," Gyamfi v. Whitaker, 913 F.3d 168, 174 (1st Cir. 2019), and it not one that this Court applies liberally or without serious deliberation.  It may have reached a different conclusion if Plaintiffs had sat on their hands for years, but this entire mess resulted in only a short delay with no obvious prejudice to the Government.  The fact that the Plaintiffs hired a lawyer quickly in the first instance reflects their view that something bad and potentially actionable had happened to them, and not necessarily that they "had both actual and constructive knowledge of the filing requirements under the FTCA[]" as the Government contends.  [ECF No. 23 at 5].  Finally, the idea that Plaintiffs would have meaningful recourse through a legal malpractice suit strains credulity given the facts of this case, considering that the most likely malfeasor is no longer practicing law and the circumstances under which he left his practice.

---

[1] Further, the Court in Neves declined to decide whether the ineffective assistance of counsel alleged qualified as extraordinary circumstances, but noted only that a "miscalculation of a deadline" is an example of garden variety excusable neglect. Neves, 613 F.3d at 36 n.6.

## IV.     CONCLUSION

The Government's motion for reconsideration, [ECF No. 22], is <u>DENIED</u>.

The job of the Department of Justice is to endeavor to do justice, which in this case would, at a minimum, involve giving the Plaintiffs their day in court.  The Government instead seeks to end the case without resolving the claims on their merits.  To be clear, the Court does not fault the Government for making its initial motion to dismiss in the name of vigorous advocacy but is dismayed that it would go the extra step of seeking reconsideration in a case like this, where there is no evidence of mistake, inadvertence, surprise, or excusable neglect, and no prejudice caused by the short delay in filing.  The Plaintiffs here, based on the allegations, are victims who have diligently sought to enforce their rights despite obstacles.  Dismissing this case on statute of limitations grounds where there is ample evidence of exceptional circumstances is not fair to Plaintiffs, who already have not seen the best our legal system has to offer, nor is it the just thing to do by any reasonable measure.

**SO ORDERED.**

October 12, 2022                                                                    /s/ Allison D. Burroughs
                                                                                             ALLISON D. BURROUGHS
                                                                                             U.S. DISTRICT JUDGE