UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANZ BISSERETH and WILLIE MAE RYNER, Plaintiffs, v. UNITED STATES OF AMERICA, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, JOHN DOE 7, JOHN DOE 8, JOHN DOE 9, and the UNITED STATES OF AMERICA IMMIGRATION AND CUSTOMS ENFORCEMENT AGENCY, Defendants. | Civil Action No. 21-cv-11068-ADB |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

    Plaintiffs Franz Bissereth ("Bissereth")[1] and Willie May Ryner ("Ryner") (collectively, "Plaintiffs") bring constitutional and state-law tort claims against the United States, the Immigration and Customs Enforcement Agency ("ICE"), and nine John Doe ICE agents ("ICE Agents") (collectively, "Defendants"), related to a June 2019 incident during which ICE Agents forcibly entered and searched Plaintiffs' home, based on a search warrant that authorized a search of Plaintiffs' apartment based on the mistaken belief that the residence was relevant to a criminal investigation.  See [ECF No. 38 ("Amended Complaint" or "Am. Compl.")].  Presently before the Court are two pre-discovery motions for summary judgment filed by the ICE Agents,

---

[1] As noted in the Amended Complaint, Bissereth has now passed away.  [ECF No. 38 at 1 n.1].

[ECF No. 49], and the United States and ICE, [ECF No. 51].  For the reasons that follow,

Defendants' motions, [ECF Nos. 49, 51], are <u>GRANTED</u> in part and <u>DENIED</u> in part.[2]

## I.    BACKGROUND

### A.    Procedural Background

Plaintiffs filed their original complaint on June 28, 2021, [ECF No. 1 ("Compl.")],

asserting constitutional claims against six unnamed individual ICE Agents, for excessive force,

unlawful detention, and unlawful search, as well as tort claims against the United States, for

assault and battery, negligence, and the intentional infliction of emotional distress, [id. ¶¶ 36–

88].

On November 18, 2021, the Government moved to dismiss the three counts brought

against it under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2672, because Plaintiffs

filed their complaint approximately two weeks beyond the FTCA's statute of limitations period.

[ECF No. 15; ECF No. 16 at 4–6].  Concluding, as Plaintiffs argued, [ECF No. 18], that

equitable tolling was warranted, the Court denied the Government's motion to dismiss on April

29, 2022, [ECF No. 21].  On July 12, 2022, the Government filed a motion for reconsideration,

[ECF No. 22], which the Court also denied, on October 12, 2022, [ECF No. 35].

On August 4, 2022, prior to the Court's ruling on the motion for reconsideration and in

anticipation of Plaintiffs filing an amended complaint, the Government moved for a protective

order, allowing for the use of pseudonyms for the ICE Agents in public filings.  [ECF No. 29].

---

[2] Plaintiffs also request in their opposition to the Government's motion that the Court strike the
ICE Agents' affidavits attached as exhibits to Defendants' shared Statement of Undisputed
Material Facts, presumably pursuant to Rule 56(h), asserting that the affidavits were filed to
further delay the proceedings "in bad faith."  [ECF No. 56 at 2 (citing, seemingly incorrectly,
Fed. R. Civ. P. 26(h))].  Given that Plaintiffs have not provided any argument in support of this
request, beyond this assertion, the Court declines to impose this sanction.

The Court granted the motion in part, ordering the parties to refer to the ICE Agents by pseudonyms in public filings for the time being, but indicating that it would likely re-evaluate and vacate or modify the Order in the future.  [ECF No. 30].  On September 14, 2022, the Government also sought a 60-day extension of the time within which to answer the anticipated amended complaint, to determine whether the individual ICE Agents would qualify for representation by the Department of Justice.  [ECF No. 31].  The Court granted the extension. [ECF No. 32].

Plaintiffs ultimately filed an amended complaint on October 25, 2022, which raised the same constitutional claims against nine John Doe ICE Agents and the same tort claims against the United States and ICE.  See [Am. Compl. ¶¶ 36–88].

On December 23, 2022, before engaging in any discovery, Defendants filed motions for summary judgment.  [ECF Nos. 49, 51].  Plaintiffs opposed the motions on February 21, 2023. [ECF Nos. 55, 56].  Several weeks later, on March 8, 2023, Plaintiffs filed an affidavit from Plaintiff Ryner and an affidavit from Plaintiffs' counsel, both ostensibly in support of their oppositions.  [ECF Nos. 61, 62].  Defendants filed replies on March 24, 2023.  [ECF Nos. 67, 68].  In their replies, Defendants requested that the Court set a deadline for Bissereth's personal representative to move to substitute themselves or to schedule a hearing on the issue.  [ECF No. 67 at 6; ECF No. 68 at 10–11].  Plaintiffs filed sur-replies on April 10, 2023.  [ECF Nos. 74, 77]. In their sur-replies to the ICE Agents' motion, Plaintiffs sought leave to a file a statement of disputed facts.  [ECF No. 74 at 5].[3]

---

[3] In their opposition to the Government's motion, in addition to requesting that the Court strike the ICE Agents' declarations, as discussed above, Plaintiffs also requested that the Court issue an order showing cause why Defendants should not be sanctioned for filing their motions for summary judgment.  [ECF No. 56 at 2–3].  In its reply, the Government opposed Plaintiffs'

### B.      Local Rule 56.1

As a preliminary issue, Defendants argue that the facts in their shared statement of undisputed material facts, [ECF No. 48 ("SUMF")], should be deemed admitted in their entirety because Plaintiffs did not file a concise statement of disputed material facts, as required by Local Rule 56.1, [ECF No. 67 at 2–3; ECF No. 68 at 2].  Defendants are correct that Plaintiffs did not file such a statement.  Instead, Plaintiffs asserted in their briefing that many, if not all, of the Government's allegedly "undisputed" facts were, in fact, disputed.  See, e.g., [ECF No. 56 at 2 ("Both motions were supported by what all Defendants refer to [as] 'Undisputed Facts.'  No responsible party would view these facts as undisputed."); id. ("The motion should be denied, because . . . [it is based on] pre-discovery facts that no reasonable officer of the court would view as undisputed."); ECF No. 55 at 2 ("For [Defendants] to claim that there are 'settled' or 'undisputed' facts supporting disposition under Fed. R. Civ. P. R. 56 solely on the basis of their self-serving affidavits denying the Plaintiffs' allegations could not be more disingenuous.  The Defendants in their motion offer pre-discovery (and pre-answer) 'undisputed facts' in connection with its motion, which is hard to reconcile in this pre-answer state of affairs.")].  Additionally, several weeks after filing their oppositions, Plaintiffs filed an Affidavit of Plaintiff Ryner, presenting facts related to her recollection of the June 2019 incident.  [ECF No. 61 ("Ryner Aff."); ECF No. 56 at 3].

Local Rule 56.1 provides that "[a] party opposing [a] motion [for summary judgment] shall include a concise statement of the material facts of record as to which it is contended that

_____

request for sanctions.  [ECF No. 67 at 4–5].  Plaintiffs' sur-replies appear to indicate that Plaintiffs did not intend to make or have dropped any cross-motion for sanctions.  [ECF No. 74 at 4 (noting that the Court has inherent authority to sanction a party *sua sponte*, but that "Plaintiffs have made no cross motion for sanctions"); ECF No. 77 at 4 (same)].  The Court will not impose sanctions on Defendants at this time.

there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."  It also states that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." L.R. 56.1.

Nevertheless, "'[d]istrict courts enjoy broad latitude' in adopting and administering such local rules."  NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 6 (1st Cir. 2002) (quoting Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994); see also Ramsdell v. Bowles, 64 F.3d 5, 7 (1st Cir.1995) (noting district court's "great leeway in the application and enforcement of its local rules").  As such, "[w]here a party opposing a motion for summary judgment fails to comply with Local Rule 56.1, the court has the discretion to decide whether to impose the sanction of deeming the moving party's factual assertions to be admitted."  Butters v. Wells Fargo Advisors, LLC, No. 10-cv-10072, 2012 WL 5959986, at *2 (D. Mass. Nov. 27, 2012) (citing Swallow v. Fetzer Vineyards, 46 F. App'x 636, 638–39 (1st Cir. 2002)) (further citation omitted); Plourde v. Sorin Grp. USA, Inc., 517 F. Supp. 3d 76, 81 (D. Mass. 2021) (quoting Butters, 2012 WL 5959986, at *2) (same).

"As an anti-ferret rule, LR. 56.1 functions to focus a court's attention on the facts that are genuinely disputed."  Mackey v. Town of Tewksbury, No. 15-cv-12173, 2020 WL 68243, at *4 (D. Mass. Jan. 7, 2020).  "Rules like Local Rule 56 are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court."  Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007) (discussing similar Puerto Rico rule).  The late-filed Ryner Affidavit is similar to what the First Circuit has described as "an alternate statement of facts in narrative form."  Id. at 7.  Although the First Circuit has held that

such a statement "thwart[s]" the Rule's "salutary purpose," id., where, as here, there has been no discovery and the record is much more limited, the Court finds that the Rule's policy considerations carry much less weight, see Sarkisian v. Austin Preparatory Sch., No. 20-cv-12037, 2022 WL 17683765, at *13 (D. Mass. Dec. 6, 2022) (quoting Cában Hernández, 486 F.3d at 7–8). Further, the SUMF presents facts related to the June 2019 incident as undisputed, largely based only on the ICE Agents' descriptions of the event, even though the SUMF contradicts many of the facts asserted in Plaintiffs' Amended Complaint. Compare SUMF ¶ 38 ("John Doe 5 struggled to Mr. Bissereth in handcuffs because he continued to resist."), with Am. Compl. ¶ 23 ("Both Mr. Bissereth and Ms. Ryner complied with the orders that Defendants were shouting at them."). Where there has been no discovery on these issues, the Court declines to treat these facts as undisputed. The Court therefore will not deem the facts in Defendants' SUMF as admitted.

### C.    Factual Background

Having determined that many of the facts pertaining to the June 2019 incident are disputed, the Court now provides a factual summary gleaned from Defendants' SUMF and attached affidavits and other exhibits, [ECF Nos. 48, 48-1–48-18], the Amended Complaint, [ECF No. 38], and Plaintiff Ryner's Affidavit, [ECF No. 61], which notes which facts are disputed.

On June 26, 2019, a warrant issued for Plaintiffs' apartment: Apartment 2, 105 Brunswick Street, Dorchester, Massachusetts ("Search Warrant"). [SUMF ¶ 15]. A Special Agent with the Department of Health and Human Services, Office of Investigation, who was also a member of the Document and Benefit Fraud Task Force of Homeland Security Investigations, applied for the Search Warrant, believing that it was the residence of an individual who had committed crimes including (1) falsely representing a Social Security Number, in violation of 42

U.S.C. § 408(a)(7)(B), and (2) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. [ECF No. 48-11; ECF No. 48-12 ¶¶ 1–3].  The Search Warrant authorized a search for "[e]vidence, fruits, and instrumentalities of violations of 42 U.S.C. § 408(a)(7)(B), and 18 U.S.C. § 1028A."  [ECF No. 48-13 at 6].

The following day, early in the morning, Plaintiffs, both in their late sixties, heard knocking on their front door and the ICE Agents announcing their presence.  [SUMF ¶ 25; Am. Compl. ¶¶ 15–16; Ryner Aff. ¶¶ 1, 2, 4–5, 11].[4]  The SUMF states that the ICE Agents specifically announced that they were "police with a warrant."  [SUMF ¶ 25].  When the door was not opened by the occupants, ICE Agents began a forcible entry using a "breaching tool," [ECF No. 48-5 ¶ 7], or battering ram, [Am. Compl. ¶ 18].  [SUMF ¶¶ 26–28].[5]  Ryner states in her Affidavit that the door was severely damaged but remained on its hinges.  [Ryner Aff. ¶ 23]. After some time, the ICE Agents heard sounds indicating that someone was trying to open the door and stopped battering before Bissereth ultimately opened the door.  [Ryner Aff. ¶ 7; SUMF ¶¶ 28–29].[6]  Defendants state that John Doe 8 gave Bissereth "verbal and physical hand commands to come out of the apartment," but that he didn't comply, and that his presence in the doorway impeded their ability to enter the apartment.  [SUMF ¶¶ 30–33].  Plaintiffs generally allege that they "complied with the orders that [the ICE Agents] were shouting at them."  [Am. Compl. ¶ 23]; see also [Ryner Aff. ¶ 10].

---

[4] John Doe 4 also instructed that the ICE Agents to "activate lights and sirens for visual and audible officer presence."  [SUMF ¶ 24].

[5] Defendants assert that John Doe 4 gave the instruction to breach the door when it seemed like the occupants were not going to open it.  [SUMF ¶¶ 24–25].

[6] In their Amended Complaint, Plaintiffs state that the door was breached and opened before Bissereth reached the door.  [Am. Compl. ¶ 18].

The ICE Agents proceeded to use physical force on Bissereth in order to gain entry to the apartment.  Plaintiffs assert that one or several ICE Agents punched Bissereth on the head and face, [Am. Compl. ¶ 19; Ryner Aff. ¶¶ 8, 21], threw him to the ground, and then "placed his/their knee on the back of [] Bissereth with his/their full weight," [Am. Compl. ¶ 19; Ryner Aff. ¶ 8]. The ICE Agents, on the other hand, assert that John Doe 8 grabbed Bissereth by the arm, and because Bissereth was pulling away, John Doe 8 grabbed him by the other arm and t-shirt, pulled him out of the apartment, and then "escorted him to the ground, using an arm bar technique." [SUMF ¶¶ 34-36].[7]  According to Plaintiffs, when Bissereth was on the ground, his hands were restrained, [Ryner Aff. ¶ 11], and ICE Agents pointed a loaded gun at his head, [Am. Compl. ¶ 19].  The SUMF states that John Doe 5 handcuffed Bissereth, [SUMF ¶¶ 37–38], and does not address whether a firearm was pointed at him.[8]

---

[7] Each of the ICE Agent's declarations include a statement similar to the following: "I did not assault or injure the Plaintiffs and did not intend to assault or injure the Plaintiffs."  [ECF No. 48-1 ¶ 22]; see also [ECF No. 48-2 ¶ 10; ECF No. 48-3 ¶ 26; ECF No. 48-4 ¶ 37; ECF No. 48-5 ¶ 20; ECF No. 48-6 ¶ 20; ECF No. 48-7 ¶ 21; ECF No. 48-8 ¶ 22; ECF No. 48-9 ¶ 20].  Some also declare, for example, that they did not punch or use any force against Bissereth, e.g., [ECF No. 48-3 ¶ 12], or did not witness others using unnecessary force on Bissereth, e.g., [ECF No. 48-7 ¶ 11].

[8] Although the use of firearms is not addressed in the SUMF, several ICE Agents address it in their declarations.  For example, John Doe 8's declaration states: "I did not, nor did I see any Boston HSI SRT member point a loaded handgun at Mr. Bissereth while he was laying on the floor."  [ECF No. 48-8 ¶ 12].  John Doe 4 specifically declares that "[n]o handguns were ever placed in the back of Mr. Bissereth's head."  [ECF No. 48-4 ¶ 29].  On the other hand, John Doe 3's declaration states: "I do not specifically recall pointing my weapon at Ms. Ryner or anyone else inside the apartment.  However, it is common practice to have our weapons out when conducting high risk warrant operations like the one at Plaintiffs' apartment."  [ECF No. 48-3 ¶ 15].  John Doe 9's declaration likewise states: "I had my firearm unholstered in a low ready position with my finger not on the trigger as is the standard practice when entering an unknown area with potential threats during the execution of a warrant."  [ECF No. 48-9 ¶ 15].  Several of the other ICE Agents state that that they did not point, or do not recall pointing, a gun at Ms. Ryner, e.g., [ECF No. 48-4 ¶ 31; ECF No. 48-6 ¶ 13], or at either Plaintiff, [ECF No. 48-5 ¶ 16].

Some time after Bissereth was put on the ground, Ryner got out of bed, came to the front door, and saw him there.  [Am. Compl. ¶ 21; Ryner Aff. ¶ 8].  According to Plaintiffs, an ICE Agent then came into the apartment with a gun pointed at Ryner's head, and told her to go into the hallway.  [Ryner Aff. ¶ 8].  The SUMF states that ICE Agents encountered Ryner in the hallway and that John Doe 3 then handcuffed her.  [SUMF ¶ 40].  Ryner states that after she was handcuffed, she was led out of the apartment into the hallway and pushed against a wall.  [Ryner Aff. ¶¶ 11–12; Am. Compl. ¶ 25].

ICE Agents, including John Doe 8, then entered the apartment.  [SUMF ¶¶ 39–40].  John Doe 8 saw that an internal door in the apartment was locked, and proceeded to "breach[] the door of that bedroom with his foot," [id. ¶ 39], which, by his account, resulted in minimal damage, [ECF No. 48-8 at 10].[9]  Plaintiffs allege that the door was broken, and that its frame was broken off the wall.  [Am. Compl. ¶ 26]; see also [Ryner Aff. ¶ 16 (stating that kitchen door and entire frame was broken off the wall)].

According to the SUMF, "[a]fter the John Doe Defendants secured the residence and finished the protective sweep, a separate investigative team would have conducted the search for the items listed on the warrant."  [SUMF ¶ 41].  Plaintiffs allege that while ICE Agents were in their apartment, they could hear breaking sounds and that many of their belongings were damaged as a result of the search.  [Ryner Aff. ¶ 16].

---

[9] Although the paragraphs of John Doe 8's Declaration cited by the SUMF do not provide support for this point, see [ECF No. 48-8 ¶¶ 9, 10 ("At this time, breaching attempts were terminated, allowing the door to be opened by Mr. Bissereth. . . . I did not attempt to breach the door but was standing nearby when the knock and announce and attempted breach occurred.")], in a June 2021 Affidavit attached to the Declaration, John Doe 8 attested that "[t]here was minimal damage to the door and door frame, [ECF No. 48-8 at 10].

Plaintiffs were eventually brought back into the apartment and put on the couch.  [Ryner ¶ 17].  Ryner states that at this time her wrists were in a lot of pain and she could see that Bissereth's face was bleeding.  [Ryner Aff. ¶¶ 20–21].

Later, Bissereth was evaluated by a Special Agent (SA) with Homeland Security Investigations (HSI) and then Boston Emergency Medical Services (EMS).  [SUMF ¶¶ 43, 45]. The EMS report indicates that Bissereth was experiencing lower jaw and hip pain, that his lower jaw was swollen and tender, and that there was minor bleeding in his mouth.  [ECF No. 48-15]. The report also states that Bissereth had recently had surgery on his hip, but refused to have it examined.  [Id.].  He also refused transport to a hospital.  [Id.]  Plaintiffs allege that the next day, Bissereth went to Boston Medical Center to seek treatment for his injuries, and the day after that, went to his general physician for further medical care.  [Am. Compl. ¶ 33].  Ryner states that since the incident, she has had nightmares and feels fearful and anxious when she hears a knock at her door.  [Ryner Aff. ¶ 26].

Plaintiffs were not arrested or charged.  [ECF No. 50 at 1 n.2].  Defendants concede that neither of the Plaintiffs were the target of the investigation, and that the target lived in a different apartment, meaning that the Plaintiffs suffered the indignity and trauma of an unwarranted search.  [Id.].

## II.      LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (alteration in original) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  "A fact is material

if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted). By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. Plat 20, Lot 17, 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

> To succeed in showing that there is no genuine dispute of material fact, the moving party must . . . "affirmatively produce evidence that negates an essential element of the non-moving party's claim," or, using "evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial."

Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (second alteration in original) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002) (citation omitted). That is, the nonmoving party must set forth specific, material evidence showing that there is "a genuine disagreement as to some material fact." Plat 20, Lot 17, 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)) (further citation omitted). In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted).

Defendants have "engaged in the unusual strategy of filing a motion for summary judgment before any discovery has been conducted. The First Circuit . . . has held that summary

judgment is inappropriate where parties have had insufficient opportunity to engage in discovery." Fid. Real Est. Partners V LLC v. Lembi, No. 06-cv-11141, 2006 WL 8458456, at *2 (D. Mass. Dec. 15, 2006) (citing Velez v. Awning Windows, Inc., 375 F.3d 35, 39 (1st Cir. 2004)). "Because no discovery has yet been taken in this case, the Court will not enter summary judgment on behalf of the plaintiff unless it is exceedingly clear that there are no genuine issues of material fact." Id.; see also Velez, 375 F.3d at 39 ("when a party moves for summary judgment, the opposing party must be afforded a fair chance to obtain and synthesize available information before being required to file an opposition").

## III.    DISCUSSION

### A.    The ICE Agents' Motion for Summary Judgment

The ICE Agents argue that they are entitled to summary judgment on Plaintiffs' claims against them because: (1) there is no Bivens remedy for Plaintiffs' claims, [ECF No. 50 at 5–11]; (2) they are entitled to qualified immunity, [id. at 11–16]; (3) the Amended Complaint fails to identify the individual ICE Agents or adequately allege the misconduct of each individual ICE Agent, [id. at 17–18]; and (4) Plaintiffs' claims are time-barred, [id. at 18–19]. The ICE Agents also assert that because Bissereth has passed away his claim for punitive damages must be dismissed. [Id. at 16–17]. As discussed below, the Court finds that Plaintiffs do not have a Bivens claim against the individual agents and, as a result, will not address the ICE Agents remaining arguments other than to note that the claims are not time barred, the Court would not resolve the issue of qualified immunity on these facts prior to discovery, and to move for summary judgment based on the failure to identify the agents or to parse the misconduct among the defendants prior to any discovery taking place is unseemly at best.

"The Bivens doctrine allows plaintiffs to vindicate certain constitutionally protected rights through a private cause of action for damages against federal officials in their individual

capacities." DeMayo v. Nugent, 517 F.3d 11, 14 (1st Cir. 2008) (citation omitted).  The ICE

Agents assert that there is no private right of action for Plaintiffs' claims, because, under recent

Supreme Court precedent, Egbert v. Boule, 142 S. Ct. 1793 (2022), these claims present a new

context that does not warrant a Bivens remedy.  [ECF No. 50 at 6].  Plaintiffs respond that "this

case does not present materially different facts from Bivens and does not constitute a new Bivens

claim." [ECF No. 55 at 2].  Additionally, Plaintiffs argue that "[a] Bivens claim post-Egbert

(and even before) is a highly fact specific analysis" ill-suited to summary judgment.  [Id.].

        In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S.

388 (1971), the Supreme Court determined that a man who had been handcuffed in his home by

federal law enforcement officers (specifically, officers of the now defunct Federal Bureau of

Narcotics), without a warrant, had a Fourth Amendment right to be free from unreasonable

searches and seizures.  Id. at 397.  The Supreme Court held that although there was no statutory

cause of action, the petitioner could bring a damages claim against the officers because such a

remedy could be judicially implied under the Constitution.  See id. at 399 (Harlan, J.,

concurring).  Since Bivens, the Supreme Court has only extended this implied cause of action to

two more contexts: Fifth Amendment due process claims for sex-based discrimination, see Davis

v. Passman, 442 U.S. 228 (1979), and Eighth Amendment deliberate indifference claims for

failure to provide proper medical attention, see Carlson v. Green, 446 U.S. 14 (1980).  In more

recent cases, including Egbert, the Supreme Court has cautioned that "recognizing a cause of

action under Bivens is 'a disfavored judicial activity[,]'" and "'[e]ven a single sound reason to

defer to Congress' is enough to require a court to refrain from creating such a remedy."  Egbert,

142 S. Ct. at 1803 (first quoting Ziglar v. Abbasi, 582 U.S. 120, 135 (2017); and then quoting

Nestlé USA, Inc. v. Doe, 141 S. Ct. 1931, 1937 (2021) (plurality opinion)).

As articulated in Abbasi, and re-stated in Egbert, the Supreme Court has codified a two-step process for evaluating a proposed Bivens claim. Abbasi, 582 U.S. at 138; Egbert, 142 S. Ct. at 1803. First, the court must determine "whether the case presents 'a new Bivens context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." Egbert, 142 S. Ct. at 1803 (alteration in original) (quoting Abassi, 582 U.S. at 139). "Second, if a claim arises in a new context, a Bivens remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" Id. (quoting Abbasi, 582 U.S. at 136). "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new Bivens cause of action.'" Id. at 1804 (quoting Abbasi, 582 U.S. at 137).

In Egbert, the Supreme Court relied on this framework to address whether a Bivens remedy existed for a Fourth Amendment excessive force claim against Border Patrol agents. The Ninth Circuit had held that this was a "new Bivens context," and that special factors did not counsel against recognizing a cause of action in this context. Egbert, 142 S. Ct. at 1804 (citing Boule v. Egbert, 998 F.3d 370, 386 (9th Cir. 2022)). The Supreme Court reversed, holding that there was no Bivens remedy available because "Congress is better positioned to create remedies in the border-security context, and the Government already has provided alternative remedies." Id.

Here, the ICE Agents argue that the Court should similarly hold that no Bivens remedy is available, because (1) "the presence of a warrant means Defendants were acting under a different legal mandate from the officers in Bivens," and (2) special factors exist that counsel against

14

recognizing a Bivens remedy in this new context.  [ECF No. 50 at 6].  The Court, albeit reluctantly, agrees.

               i.       <u>New Context</u>

       "Whether the existence of a warrant (even if executed unreasonably) presents a 'new context' for a <u>Bivens</u> claim has not been expressly decided by the Supreme Court," <u>Zubkova ex. rel. MT v. United States</u>, No. 22-cv-00171, 2023 WL 2468948, at *10 (S.D. Cal. Mar. 10, 2023), or the First Circuit.  Nevertheless, since <u>Abbasi</u> and <u>Egbert</u>, courts have generally held that the existence of a warrant makes a case "meaningfully different" from <u>Bivens</u>, because "the legal mandate under which defendants were operating diverges from the warrantless narcotics-investigation circumstances in <u>Bivens</u>."  <u>Cienciva v. Brozowski</u>, No. 20-cv-02045, 2022 WL 2791752, at *9 (M.D. Pa. July 15, 2022) (finding new <u>Bivens</u> context where "defendants . . . acted pursuant to a valid arrest warrant after [plaintiff] failed to report to Lackawanna County Prison"); <u>id.</u> (collecting cases).[10]  Courts have provided different explanations for why the

---

[10] <u>See also, e.g.,</u> <u>Cuney v. Choi</u>, No. 22-cv-00154, 2022 WL 16743984, at *4 (N.D.N.Y. Nov. 7, 2022) ("[H]ere, Plaintiff's claim that Defendant exceeded the scope of warrants authorizing the search of electronic data is meaningfully different from the warrantless search and arrest in <u>Bivens</u>, and presents a new context"); <u>Sheikh v. U.S. Dep't of Homeland Sec.</u>, No. 22-cv-00409, 2022 WL 16964105, at *4 (E.D. Cal. Nov. 16, 2022) ("[S]earches and seizures conducted with a warrant are meaningfully different from searches and seizures without a warrant, as they involve a different legal mandate and different judicial guidance regarding officer conduct." (citations omitted)); <u>Senatus v. Lopez</u>, No. 20-cv-60818, 2022 WL 16964153, at *4 (S.D. Fla. Oct. 12, 2022), <u>R. & R. adopted</u>, 2022 WL 16961323 (S.D. Fla. Nov. 16, 2022) ("[T]he simple fact that the arrest in this case was conducted pursuant to a warrant is sufficient to distinguish it from <u>Bivens</u>, and brings it outside the realm of a cognizable <u>Bivens</u> claim."); <u>Goodale v. Seguin</u>, No. 22-cv-00031, 2022 WL 17084400, at *4 (W.D. Tex. Nov. 17, 2022) (finding the presence of a warrant, and the fact that the arrest took place outside of Plaintiff's home, meaningfully different from <u>Bivens</u>); <u>Quinlan v. Conaty</u>, No. 21-cv-00991, 2022 WL 17822501, at *5 (W.D. Wash. Nov. 21, 2022), <u>R. & R. adopted as modified</u>, No. 21-cv-00991, 2022 WL 17820319 (W.D. Wash. Dec. 20, 2022) ("[T]his case presents a new context because the legal mandate under which defendant operated differs from the legal mandate at issue in <u>Bivens</u> because the officers in <u>Bivens</u> conducted a warrantless arrest, whereas plaintiff alleges that defendant arrested him

presence of a warrant presents a new context.  For example, the Fourth Circuit explained in

Annappareddy v. Pascale, 996 F.3d 120 (4th Cir. 2021):

> Bivens involved . . . the Fourth Amendment right to be free of unreasonable
> warrantless searches and seizures; this case, by contrast, involves searches and a
> seizure conducted with a warrant. It thus implicates a distinct Fourth Amendment
> guarantee – that "no Warrants shall issue, but upon probable cause" – governed by
> different legal standards. . . . Indeed, the Fourth Amendment sharply distinguishes
> between with-warrant and warrantless searches, treating the introduction of a
> warrant as a signal moment in the proceedings. For purposes of determining
> whether this is a "new" Bivens context, we think the "right at issue" here is
> meaningfully different from the one at issue in Bivens itself.

Id. at 126 (citing U.S. Const. amend. IV; then citing United States v. Leon, 468 U.S. 897, 913–14

(1984); and then citing Abbasi, 137 S. Ct. at 1860).

Likewise, as the Southern District of California recently articulated in Zubkova, "'[w]hen

officers obtain a warrant to search an individual's home, they also receive certain limited rights

to occupy and control the property. . . .'  This limited degree of control supports Defendants'

argument that federal agents were acting under a different legal mandate than the agents in

Bivens."  2023 WL 2468948, at *11 (alteration in original) (quoting San Jose Charter of Hells

Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 971 (9th Cir. 2005)).

Even where, as here, the Search Warrant listed the wrong address, courts have not

necessarily found this type of error relevant to the Bivens analysis.  For example, in Chavez v.

United States, No. 22-cv-00107, 2023 WL 2071555, at *17 (D. Or. Feb. 17, 2023), the District of

Oregon considered an unlawful seizure claim brought by a plaintiff who had been wrongly

---

pursuant to a warrant" (citation omitted)); Lewis v. Westfield, No. 16-cv-01057, 2022 WL
16924177, at *3 (E.D.N.Y. Nov. 14, 2022) ("While the officers in Bivens were attempting to
conduct a warrantless arrest, the defendants here were executing an arrest warrant, pursuant to
the Marshals Service's statutory authority to 'execute all lawful writs, process, and orders issued
under the authority of the United States'" (citations omitted)).

arrested because he had the same name as an individual listed on an arrest warrant.  The court

held that the case nonetheless presented a new context from Bivens, finding that the "most

notable difference [was] the existence of the warrant upon which the Marshal Defendants based

Plaintiff's arrest."  Id.; see also Young v. City of Council Bluffs, 569 F. Supp. 3d 885, 894 (S.D.

Iowa 2021) (similarly finding that an excessive force claim was meaningfully different and

presented a new context from Bivens, in part due to the existence of an arrest warrant, even

though the warrant had been issued for a different person with a similar name to plaintiff).

Likewise, the District of Puerto Rico held, in the context of allegations of intentional or reckless

misstatements in a warrant application, that "a search with a warrant—regardless of whether it

was properly acquired with probable cause—is meaningfully different from the warrantless

search in Bivens."  Quinones-Pimentel v. Cannon, No. 20-cv-01443, 2022 WL 826344, at *21

(D.P.R. Mar. 17, 2022), appeal argued, No. 22-1307 (1st Cir. Apr. 4, 2023).

     Some courts have held that the existence of a warrant does not make a case meaningfully

different than Bivens, and therefore did not implicate a new Bivens context, although many of

these cases turned on circumstances not alleged here.[11]  Although these is some appeal to the

---

[11] For example, in Kennedy v. Massachusetts, No. 22-cv-11152, 2022 WL 17343849, at *4 (D. Mass. Nov. 30, 2022), another session of this Court held that in the context of a claim related to an unconsented-to search by an FBI Agent, the existence of a warrant did not create a new Bivens context.  The warrant, however, was not a search warrant for the plaintiff's residence, as is the case here, but an arrest warrant for the plaintiff's son.  Id. at *1.  The court held that because "[a]n arrest warrant does not permit federal agents to search the home of a third party, such as [plaintiff], without exigent circumstances or consent," the claim was not meaningfully different from Bivens.  Id. (citing United States v. Steagald, 451 U.S. 204, 212–16 & n.7 (1981)). Here, although the Search Warrant was issued for the wrong apartment, it did indicate that Defendants were permitted to enter Plaintiffs' apartment.

In Prado v. Perez, 451 F. Supp. 3d 306, 315 (S.D.N.Y. 2020), the Southern District of New York held that the existence of an administrative warrant issued to ICE agents did not make plaintiff's

argument that an unreasonable search like the one here, even if pursuant to an inexcusably

flawed warrant, is more akin to Bivens, recent case law does not support extending Bivens even

to this limited extent.  The Court finds that the presence of a warrant may not always make a case

meaningfully different from Bivens, but it does here.  Although the Search Warrant identified the

wrong apartment and the ICE Agents did not otherwise have probable cause to enter and search

Plaintiffs' apartment, the ICE Agents were nonetheless executing a Search Warrant issued for

Plaintiffs' apartment and there is no evidence that any of the ICE Agents executing the warrant

had any reason to know that it had been issued for the wrong apartment.  The Court thus agrees

with the many other courts that have found that the existence of a warrant in similar

---

claim meaningfully different from Bivens because plaintiff "alleged that the administrative
immigration warrant . . . did not permit entry into or the search of his home[,] . . . [and] [t]hus,
like the federal agents in Bivens, the ICE agents . . . were not legally privileged to enter or search
[plaintiff's] home."  Similarly, in Powell v. United States, No. 19-cv-11351, 2020 WL 5126392,
at *6 (S.D.N.Y. Aug. 31, 2020), the Southern District found that where "officers deliberately
went beyond the parameters of the warrant," the presence of a warrant did not make a case
meaningfully different than Bivens.  Again, these cases differ from the situation here, where the
ICE Agents were executing a Search Warrant that indicated that the ICE Agents were permitted
to enter Plaintiffs' apartment.

Finally, in Osny Sorto-vasquez Kidd v. Mayorkas, No. 22-cv-03512, 2021 WL 1612087, at *7
(C.D. Cal. Apr. 26, 2021), adhered to sub nom. Kidd v. Mayorkas, No. 22-cv-03512, 2022 WL
17584225 (C.D. Cal. Dec. 12, 2022), the Central District of California held that even assuming
an immigration warrant was "sufficient to enter a person's home," plaintiffs did not allege that
the officers "presented [the] administrative warrant to gain entry to [plaintiff's] home."  Rather,
plaintiffs "allege[d] that the Officers tricked [plaintiff's] mother into inviting them inside the
home, and the obvious inference to be drawn from these allegations is that they did not rely on
any warrant, administrative or otherwise, to gain such entry."  Id.  Here, the ICE Agents assert,
and Plaintiffs do not specifically dispute, that the ICE Agents announced they were "police with
a warrant," before entering and searching Plaintiffs' apartment.  See [SUMF ¶ 25].

There are also a few cases without clear factual dissimilarities that have held that warrants do not
create a new Bivens context.  See Bueno Diaz v. Mercurio, 442 F. Supp. 3d 701, 704 (S.D.N.Y.
2020); Greiner v. Wall, No. 14-cv-05579, 2020 WL 996860, at *1, 3 (W.D. Wash. Mar. 2, 2020).
However, at this time, these cases are in the minority and the Court does not follow them here.

circumstances means that these officers were functioning under a different legal mandate than were the officers in <u>Bivens</u>.  As such, the Court finds this case does present a new <u>Bivens</u> context and will go on to consider whether there are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  <u>Egbert</u>, 142 S. Ct. at 1803 (quoting <u>Abassi</u>, 582 U.S. at 136).

          ii.       <u>Special Factors</u>

As discussed above, the existence of "alternative remedial structures[,] . . . like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new <u>Bivens</u> cause of action.'"  <u>Id.</u> at 1804 (quoting <u>Abassi</u>, 582 U.S. at 137).  Here, as Defendants argue, there are established remedial structures within the Department of Homeland Security ("DHS") – DHS is required, by statute, to "control, direct, and supervise all of its employees," [ECF No. 50 at 9 (citing 8 U.S.C. § 1103(a)(2))], and, by regulation, to "to investigate alleged violations of the standards for enforcement activities and accept grievances from anyone who wants to lodge a complaint,"); [<u>id.</u> at 9–10 (citing 8 C.F.R. § 287.8; and then citing <u>id.</u> §§ 287.10(a)-(b))].  In <u>Egbert</u>, the Supreme Court found that the same statutes and regulations afforded sufficient "alternative remedies" to "foreclose a <u>Bivens</u> action."  <u>Egbert</u>, 142 S. Ct. at 1806.  Plaintiffs' arguments that the Court should nonetheless diverge from the Supreme Court's clear holding on this point are unavailing.  The Court thus finds there is no <u>Bivens</u> remedy available for Plaintiffs' constitutional claims against the individual ICE Agents and their motion for summary judgment is <u>GRANTED</u>.

**B.    The Government's Motion for Summary Judgment**

          i.       <u>Count I (Assault and Battery) and Count III (Intentional Infliction of Emotional Distress)</u>

The Government asserts that it is entitled to summary judgment on Plaintiffs' claims for

Assault and Battery and the Intentional Infliction of Emotional Distress ("IIED") because the

force used by the ICE Agents was objectively reasonable.  [ECF No. 52 at 5].  Plaintiffs'

opposition states generally that the Court should deny the Government's motion because it is

based on "pre-discovery facts that no reasonable officer of the court would view as undisputed."

[ECF No. 56 at 2].

As to Count I, the Government argues the standard applied in the context of Fourth-

Amendment excessive-force claims also applies to Plaintiffs' claim for assault and battery.  [ECF

No. 52 at 3].  "[L]aw enforcement personnel are authorized to use reasonable force, and no more,

to execute warrants and carry out lawful orders."  Commonwealth v. Williams, 790 N.E.2d 662,

670 (Mass. 2003).  Force is "excessive" and violates the Fourth Amendment, if "the defendant

employed force that was unreasonable under all the circumstances."  Correia v. Feeney, 620 F.3d

9, 12 (1st Cir. 2010) (quoting Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009)).  "Whether a

seizure is reasonable depends on 'the facts and circumstances of each particular case, including

the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of

the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

flight.'"  Mlodzinski v. Lewis, 648 F.3d 24, 34 (1st Cir. 2011) (quoting Graham v. Connor, 490

U.S. 386, 396 (1989)).[12]  Assuming, without deciding, that this standard applies to Plaintiffs'

assault and battery claim, the Court declines to make such a fact-intensive evaluation based on

---

[12] Depending on the circumstances, "an officer's act of pointing a firearm at an individual
may constitute excessive force," Penate v. Scampini, 600 F. Supp. 3d 129, 136–37 (D.
Mass. 2022) (citing Stamps v. Town of Framingham, 813 F.3d 27, 39–41 (1st Cir. 2016);
Mlodzinski, 648 F.3d at 37–50; Lucas v. City of Boston, No. 07-cv-10979, 2009 WL
1844288, at *19 (D. Mass. Jun. 19, 2009)), or may be held to be reasonable, Penate, 600
F. Supp. at 136–37 (citing Los Angeles County v. Rettele, 550 U.S. 609, 614 (2007);
Muehler v. Mena, 544 U.S. 93, 96–98 (2005); Schubert v. City of Springfield, 589 F.3d
496, 503 (1st Cir. 2009); Flowers v. Fiore, 359 F.3d 24, 30 (1st Cir. 2004); Diaz v.
Devlin, No. 16-cv-40039, 2019 WL 4804803, at *5 (D. Mass. Sept. 30, 2019)).

the limited pre-discovery record.  To rule based on the alleged undisputed facts presented by Defendants, which come, almost exclusively, from their own declarations characterizing the event, would require the Court to ignore its obligation to "take the evidence in the light most flattering to the party opposing summary judgment" and "indulg[e] all reasonable inferences in that party's favor."  Cochran, 328 F.3d at 6 (citation omitted).

The Court reaches the same conclusion about Plaintiffs' intentional infliction of emotional distress ("IIED") claim.  Under Massachusetts law, to assert an IIED claim, Plaintiff must allege: "(1) that [a defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe."  Galvin v. U.S. Bank, N.A., 852 F.3d 146, 161 (1st Cir. 2017) (quoting Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014)).  Where police officers "merely carr[y] out their obligations as law enforcement officials[,]" their "conduct 'as a matter of law cannot be deemed extreme and outrageous.'"  Sietins v. Joseph, 238 F. Supp. 2d 366, 379 (D. Mass. 2003) (quoting Sena v. Commonwealth, 629 N.E.2d 986, 994 (Mass. 1994)).  "That said, actions by law enforcement officers that are objectively unreasonable under the Fourth Amendment to the United States Constitution may be deemed extreme and outrageous.  An officer's actions may be so construed if he uses excessive force."  Gill v. United States, 588 F. Supp. 3d 134, 139 (D. Mass. 2022) (citing Spencer v. Roche, 755 F. Supp. 2d 250, 269 (D. Mass. 2010); Barbosa v. Conlon, 962 F. Supp. 2d 316, 334 (D. Mass. 2013)).  Again, the Court cannot determine whether the ICE Agents' use of force was extreme and outrageous without a more complete factual record.

As such, the Government's motion for summary judgment as to Counts I and III is DENIED.

21

ii.    Count II (Negligence)

The Government next argues that summary judgment should enter on Plaintiffs' claim for negligence because the ICE Agents did not breach any duty owed to Plaintiffs.  [ECF No. 52 at 5–6].  The Government concedes that the ICE Agents "had a duty to exercise reasonable care in executing the warrant," but argues that "the evidence shows that they did."  [Id. at 5].  As discussed above, the reasonableness of the ICE Agents' actions cannot be determined based on the record before the Court.  The Government's motion as to this claim is therefore DENIED.

iii.    All Claims

Finally, the Government argues that all claims against it must be dismissed pursuant to Rule 8(a)(2), because the Amended Complaint does not identify which ICE Agents took the challenged actions.  [ECF No. 52 at 7 (adopting the arguments made on the same point in the ICE Agents' motion)].  Plaintiffs respond that this argument fails to account for: (1) the Government's refusal to produce the names of the ICE Agents without a protective order; (2) the Government's failure to provided Plaintiffs sufficient information about those Agents' involvement in the incident, despite the Government's assertions to the contrary; and (3) the fact that all ICE Agents participated in the misconduct, in concert, and therefore the Amended Complaint's allegations as to the actions of all the ICE Agents are adequate.  [ECF No. 55 at 15–17].

Rule 8(a)(2) provides that a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Likewise, "[t]he complaint must sufficiently identify the alleged misconduct of each defendant so that he has fair notice of the nature of the claim asserted and the factual grounds upon which it rests."  Cortez v. Steinberg, No. 21-cv-10870, 2021 WL 3400617, at *2 (D. Mass. June 29, 2021) (citing Silverstrand Invs. v. AMAG

Pharm., Inc., 707 F.3d 95, 101 (1st Cir. 2013)), aff'd, No. 21-1584, 2022 WL 3098300 (1st Cir. May 16, 2022).  Where, as here, (1) Plaintiffs' failure to identify specific ICE Agents in their complaint appears to have resulted from a dispute related to a protective order, and (2) Plaintiffs have not identified individual ICE Agents but have alleged details as to the conduct that occurred, the Court finds that Plaintiffs' allegations provide adequate notice of the nature of the claims asserted.  Cf. Hernandez v. Causey, No. 17-cv-00123, 2022 WL 4594023, at *9 (S.D. Miss. Sept. 29, 2022) ("[H]ere, Hernandez's pleadings do not sufficiently identify the conduct of specific ICE agents, apart from Causey.  Instead, Hernandez relies on conclusory allegations that unknown ICE agents were involved or participated in the events leading to the shooting. . . . In failing to identify the other ICE agents, or their alleged wrongful behavior, Hernandez has failed to allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (emphasis added) (citations omitted)).

        iv.    ICE as a Defendant

        The Government also argues that ICE should be dismissed as a defendant because "[t]he FTCA makes it clear that individual agencies of the United States may not be sued in tort for personal injuries or death caused by 'the negligent or wrongful act or omission' of any federal employee acting within the scope of his or her employment."  [ECF No. 52 at 7 (quoting McCloskey v. Mueller, 385 F. Supp. 2d 74, 78 (D. Mass. 2005), aff'd, 446 F.3d 262 (1st Cir. 2006)].  The Court agrees that Plaintiffs have asserted claims against federal employees acting within the scope of their employment and, as such, ICE is not a proper defendant.  The Government's motion to dismiss ICE as a defendant is therefore GRANTED.

v.   Personal representative for Plaintiff Bissereth

Finally, the Government requests, pursuant to Rule 25(a)(1), that the Court set a deadline for the personal representative of Bissereth to move to substitute themselves for Bissereth, or alternatively, schedule a hearing to discuss the failure to move to substitute.  [ECF No. 68 at 10]; see also [ECF No. 52 at 1 n.1].  Plaintiffs did not respond to this request.  The Court will GRANT this request and orders that a motion for substitution be filed prior to trial and in any event no later than 60 days from the date of this Order unless Plaintiffs file a motion seeking an extension for good cause shown.

## IV.   CONCLUSION

The ICE Agents' motion for summary judgment, [ECF No. 49], is GRANTED.  The Government's motion for summary judgment, [ECF No. 51], is GRANTED in part and DENIED in part.  Specifically, the Government's motion to dismiss ICE as a defendant and the Government's request to set a deadline for a motion for substitution are GRANTED, as set forth above.  The Government's motion is otherwise DENIED.

**SO ORDERED.**

July 6, 2023                                      /s/ Allison D. Burroughs
                                                 ALLISON D. BURROUGHS
                                                 U.S. DISTRICT JUDGE